# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANGELA DENISE AKINS KING,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 17-878 |
| v. | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant.[1] | * | |
| | *********** | |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff Angela Denise Akins King seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 18).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R.

---

[1] On April 17, 2018, Nancy A. Berryhill became the Acting Commissioner of Social Security. *See* 5 U.S.C. § 3346(a)(2); *Patterson v. Berryhill*, No. 2:18-cv-00193-DWA, slip op. at 2 (W.D. Pa. June 14, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.

# I

## Background

Born in 1967, Plaintiff has a high-school education and previously worked as a security supervisor, security guard, corrections officer, and deputy sheriff. R. at 32, 46, 48-49, 58. Plaintiff filed an application for DIB on August 12, 2013, alleging disability beginning on April 2, 2013. R. at 21, 166-72. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 78-108. On January 19, 2016, ALJ Hope Grunberg held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified. R. at 40-77. On February 4, 2016, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of April 2, 2013, through the date of the decision. R. at 18-39. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 17, 2017. R. at 1-7, 15-17, 273-74. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 31, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A.   **Roderick Haithcock, M.D.**

The ALJ reviewed the opinion of Roderick Haithcock, M.D., in her decision:

Roderick Haithcock, M.D., [Plaintiff's] former primary care provider, stated in December 2013 that because [Plaintiff] cannot carry a gun she is completely and totally disabled. Dr. Haithcock stated in June 2014 [Plaintiff] has been totally disabled since July 2011 and cannot sit, stand, or walk for more than ten minutes. Dr. Haithcock added in July 2014 [Plaintiff] cannot walk even one block, can sit for no more than twenty minutes at a time and less than two hours in a workday, and can stand for no more than fifteen minutes at a time and less than two hours in a workday. Dr. Haithcock indicated [Plaintiff] must walk every thirty minutes for twelve minutes at a time without a use of an assistive device and will require five thirty-minute breaks to lie down during the workday. Dr. Haithcock indicated [Plaintiff] can never lift, twist, crouch, or climb and can rarely stoop. He further opined [Plaintiff] can reach or handle objects up to one percent of the day, perform fine manipulation up to three percent of the day, will be off task twenty-five percent of the day, can tolerate only low stress work, and will miss more than four days each month.

R. at 29 (citations omitted); *see* R. at 448, 528-31, 534.

B.   **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

[Plaintiff] alleges she cannot work due to her degenerative disc disease and knee degeneration. [Plaintiff] indicated she has difficulty sitting for long periods due to back and neck pain and has joint pain with standing or walking. She indicated her back pain and neck pain interfere with her sleep and cause her to move more slowly. She testified she has a burning sensation in her neck and back that causes numbness and tingling in her arms and hands and weakens her grip. She also testified her lower back pain runs down her legs and prevents her from walking. She also stated her knees swell and cannot bend fully, and her pain interferes with her ability to concentration during the day.

Functionally, [Plaintiff] estimated she can sit twenty minutes at a time, stand fifteen to twenty minutes at a time, and walk five minutes at a time. She testified she can lift no more than ten pounds. [Plaintiff] testified she uses a cane and back brace and has required a walker since her knee surgery.

R. at 26 (citations omitted); *see* R. at 46-69, 212-13, 231.

**C. VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience and with the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the sedentary jobs of fishing reel assembler, ticket checker, or eyeglass frames polisher. R. at 72, 74.[3] Regular, competitive employment would not permit an individual to lie down throughout the day. R. at 75. An individual would be allowed to be only 1% to 4% off task at work. R. at 74-75. Allowable absences in regular, competitive employment would only be once a month or three times in a quarter. R. at 75. With the exception of the VE's testimony regarding absenteeism and being off task, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 75.

**III**

**Summary of ALJ's Decision**

On February 4, 2016, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of April 2, 2013; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a fishing reel assembler, ticket checker, or eyeglass frames polisher. R. at 23-33. The ALJ thus found that she was not disabled from April 2, 2013, through the date of the decision. R. at 33.

In so finding, the ALJ found that Plaintiff had the severe impairments of cervical degenerative disc disease, lumbar degenerative disc disease, degenerative joint disease of the bilateral knees, and obesity. R. at 24. The ALJ found, however, that Plaintiff's narcolepsy was not a severe impairment:

> [Plaintiff] also testified she has a history of narcolepsy. She testified she currently sleeps frequently throughout the day, with up to three hours in an eight-hour period spent sleeping. However, [Plaintiff] stated doctors initially diagnosed narcolepsy in approximately 2000, and she did not consider it significant at the time. She testified she continued to work through her narcolepsy and fatigue, and noted it did not significantly interrupt her performance of her job duties. Because [Plaintiff] indicated she performed substantial gainful activity despite her narcolepsy and fatigue, the undersigned does not find narcolepsy a severe impairment.

R. at 24; *see* R. at 66-68.

The ALJ then found that Plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs. She may not climb ladders, ropes, or scaffolds and should avoid workplace hazards such as unprotected heights and dangerous moving machinery. She must avoid extreme cold temperatures. [Plaintiff] can frequently handle, finger, and reach overhead with the bilateral upper extremities.

R. at 26.

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible for the reasons explained in this decision." R. at 26-27. "Because [Plaintiff] has an extensive treatment history, but still performs a variety of daily activities and does not frequently use an assistive device, the undersigned finds [her] allegations partially credible." R. at 28. The ALJ gave "little weight to Dr. Haithcock's opinion and not controlling weight" because "the opinions [Plaintiff] is disabled address an issue reserved to the Commissioner and thus receive little weight. Portions of Dr. Haithcock's opinions are also contradictory, such as the inability to walk for even one city block and a need for frequent walking breaks of twelve minutes." R. at 29 (citation omitted).

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**<u>Substantial Evidence Standard</u>**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ erred in finding that her narcolepsy was not a severe impairment. Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 15-1. She also maintains that the ALJ failed to give proper weight to the opinions of her treating physicians. *Id.* at 10-12. Plaintiff finally argues that the ALJ's hypothetical questions to the VE and the RFC assessment are legally insufficient because they fail to address her non-exertional limitations. *Id.* at 12-13. For the reasons discussed below, the Court remands this case for further proceedings.

Plaintiff first maintains that the ALJ erroneously found that her narcolepsy was not a severe impairment. *Id.* at 9-10 (citing *Albert v. Astrue*, Civil Action No. CBD-10-2071, 2011 WL 3417109, at *6 (D. Md. July 29, 2011); *Boston v. Barnhart*, 332 F. Supp. 2d 879, 885 (D. Md. 2004); *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 518 (D. Md. 2002)). She, however,

> misunderstands the purpose of step two in the analysis. Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (alteration in original) (citations omitted). "Moreover, step two was decided in [Plaintiff's] favor . . . . [She] could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand." *Id.* at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)); *accord Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam). Plaintiff's contention that the ALJ

erred at step two by failing to determine that her narcolepsy was a severe impairment thus is unavailing.

Remand is warranted, however, because the ALJ failed to explain how Plaintiff could remain on task for more than 95% of an eight-hour workday or not be absent more than one day per month at work. According to the VE, being off task for more than 4% of a workday and missing work more than once a month would preclude employment. R. at 75. The ALJ "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (second alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). In particular, the ALJ "must build a logical bridge between the limitations [she] finds and the VE evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).

Here, the ALJ found that Plaintiff "performs a variety of daily activities and does not frequently use an assistive device." R. at 28. The ALJ found that Plaintiff could iron and prepare meals in an oven. R. at 28 (citing R. at 214). Plaintiff reported, however, that she prepared meals weekly and that it would take her "[a] couple of hours." R. at 214. She also reported that she would perform household chores "[a]ll day and once a week." R. at 214. Although the ALJ found that Plaintiff "stated she uses a motorized cart to shop . . . for several hours, suggesting greater ability to sit than she alleges" (R. at 28), Plaintiff reported that she shopped "only when needed" for "a couple of hours" and used a mobile cart "[m]ost of the time"

11

(R. at 215). The ALJ here "did not acknowledge the limited extent of those activities as described by [Plaintiff] or explain how those activities showed that [she] could sustain a full-time job." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017). "[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *see Lewis*, 858 F.3d at 868 n.3; *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work.").

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Because the ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

In short, the inadequacy of the ALJ's analysis frustrates meaningful review. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday); *Ashcraft v. Colvin*, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *11 (W.D.N.C. Dec. 21, 2015) (remanding under fourth sentence of 42 U.S.C. § 405(g) because court was unable to review meaningfully ALJ's decision that failed to explain exclusion from RFC assessment an additional limitation of being 20% off task that VE testified would preclude employment). Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is appropriate, and the Court does not address Plaintiff's remaining arguments.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: August 29, 2018 /s/
Thomas M. DiGirolamo
United States Magistrate Judge